# Exhibit E

# APPLICATION FOR SEARCH WARRANT and SUPPORTING AFFIDAVIT

(This application and affidavit to be detached by Justice issuing warrant and filed separately with the court to which the warrant is returnable)

**Instructions:** A person seeking a search warrant shall appear personally before any justice, associate justice or special justice of the municipal, district, or superior court and shall give an affidavit in substantially the form hereinafter prescribed. The affidavit shall contain facts, information, and circumstances upon which such person relies to establish probable cause for the issuance of the warrant and the affidavit may be supplemented by oral statements under oath for the establishment of probable cause. The person issuing the warrant shall retain the affidavit and shall make notes personally of the substance of any oral statements under oath supplementing the affidavit or arrange for a transcript to be made of such oral statements. The person issuing the search warrant shall deliver the affidavit and the notes or transcript within three days after the issuance of the warrant to the court to which the warrant is returnable. Upon the return of said warrant, the affidavit and the notes or transcript shall be attached to it and shall be filed therewith and they shall be a public document when the warrant is returned unless otherwise ordered by a court of record.

## THE STATE OF NEW HAMPSHIRE

**Rockingham, SS.**                                                                                                   **Exeter District Court**

January 12, 2022

I, Rockingham County Sheriff's Deputy Task Force Officer Stephen P. Soares being duly sworn, depose and say:

1. I am a full-time certified police officer for the Town of Epping, New Hampshire and have been so employed since April, 2008. Prior to working in Epping, I was employed as a full-time police officer with the Town of Northwood, New Hampshire. I am a graduate of the 141st session of the New Hampshire Police Standards and Training Council Full Time Police Academy. I am a sworn Rockingham County Sheriff's Deputy assigned as a Task Force Officer (TFO) to the Rockingham County Sheriff's Office Drug Task Force. I have attended the Basic DEA school, and have an extensive history working drug / narcotic cases.

2. On March 30, 2021 the Rockingham County Sheriff's Office Drug Taskforce was contacted by the Drug Enforcement Agency (DEA) Boston TDS Group in reference to an individual that was purchasing a large quantity of Methamphetamine. Confidential information was relayed to the task force that;

**Jacob Parlin, D.O.B. 12-30-1979**
**1230 Carl Broggi Highway**
**Lebanon, ME**

was going to be purchasing approximately 2 pounds of Methamphetamine in the Boston, MA area, and would be traveling back to the State of Maine. DEA advised that Jacob was a known drug user, with an extensive criminal history, and had a suspended driver license out of New Hampshire.

3. On March 31, 2021 at approximately 1:00am, DEA contacted us again stating that they had just observed the drug transaction take place in an open parking lot. DEA advised that Jacob was handed a white bag from their known source and was now headed back to Maine via Rt. 95 N/B. DEA advised that Jacob was driving a black Chrysler 300 bearing Florida Registration DFTK46. We ran the listed registration and noted that it came back to EAN Holdings (Lease Vehicle). Through my training and experience, it is very common for drug users / dealers to utilize rental cars to avoid police detection. DEA advised that they had multiple agents surveilling Jacob, and would follow him back to our location.

4. Deputy Lindsey Cunningham and I remained in contact with DEA, and eventually met up with them on Rt. 95 in the area of Topsfield, MA.  Deputy Cunningham and I located Jacob's vehicle and followed back on Rt. 95 N/B into NH.  Deputy Cunningham and I noticed Jacob was the driver and there appeared to be a female in the front passenger seat.  Deputy's Michael Greeley and Steven MacPherson were in Rockingham County Sheriff's Office cruisers at the Rt. 95 cross over.

5. At this time Jacob was traveling at approximately 75 MPH, and in lane 2.  As soon as the deputy's cruisers were in view, Jacob slammed on his brakes and moved into lane 1. Jacob then took a hard right into the Rt. 95 N/B Seabrook rest stop.  Both units and Deputy Cunningham followed the vehicle into the back parking lot of the rest stop. Once in the rear parking lot of the rest stop, Jacob began to pick up speed as if he was going to attempt to evade following Deputies. As Jacob began to exit the rest stop and return back on to Rt 95 N/B, Deputy Greeley activated his lights and stopped the vehicle.

6. According to Deputy Greeley, he approached the driver's side of the vehicle and Deputy MacPherson approached on the passenger side.  Deputy MacPherson advised that he asked Jacob for his driver's license. Jacob immediately became agitated and he stated that he did not have one. When asked why, Jacob reached down behind the driver's seat and said, I'll show you a driver's license in a threatening manner.

7. Since Jacob's license was under suspension and he posed a threat to the officers, he was asked to step from the vehicle. Jacob did not cooperate at first but then freely stepped out. When Jacob opened the drivers side door to get out there was a white bag underneath the driver's seat on the floor with what appeared to be a large amount of white substance. Deputy Greeley searched Jacob and then placed him under arrest for Driving after suspension, third offense. Deputy Greeley walked Jacob to the rear of the vehicle and had him sit on the ground. According to Deputy Greeley, once Jacob sat on the ground, a clear plastic baggie of crystal-like substance fell from his right-side front pocket of his hoodie onto the ground.

8. Deputy Greeley read Jacob his rights under Miranda. Deputy Greeley asked Jacob if he understood his rights and he said yes. Jacob agreed to speak to Deputy Greeley. Deputy Greeley asked what it was that fell from his pocket and Jacob stated he knew nothing about the baggie. According to Deputy Greeley Based on his training and experience he believed this crystal-like substance to be the illicit drug Methamphetamine.

9. Deputy Cunningham then spoke to Jacob. Deputy Cunningham asked Jacob if there was anything illegal in the vehicle. Jacob said you know what's in there. Deputy Cunningham again asked what was in the car, Jacob said; "there is a few pounds," but I'm not letting you search the car. Deputy Cunningham explained to Jacob that the Sheriff's Office would be seizing the car and applying for a search warrant.

10. K-9 Seabrook Police Officer Tyler Houldsworth arrived he then walked his K9 (Henry) around the suspect's vehicle. Officer Houldsworth told me that that Henry, positively alerted on the front driver's door area.  This is consistent with where Deputies earlier observed the white package.

11. The vehicle was towed to the Rockingham County Sheriff's Office.  Deputy Cunningham remained with and followed the vehicle until it was secured at the Sheriff's office.  The vehicle was secured and sealed, as standard, awaiting the service of a search warrant.

12. Based on my training and experience, I know people who possess illicit drugs / paraphernalia, typically have additional hidden drugs inside their vehicles. See Attachment 'A' for further.

13. Whereby I request this honorable court to issue a search of a; black **2019 Chrysler 300 VIN# 2C3CCABG6KH609410 bearing Florida Registration DFTK46,** which is currently secured and stored at the Rockingham County Sheriff's Office 99 North Road Brentwood, NH 03833.

_____
Name

Then personally appeared the above named _____ and made oath that the foregoing affidavit by him subscribed is true.

Before me this _____ day of _____ 2021

_____
Justice of the _____ Court
(COURT SEAL)

USAO_001276