UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JACOB PARLIN,<br><br>Defendant | CRIMINAL No. 1:21-cr-10350-10-LTS |

## GOVERNMENT'S TRIAL MEMORANDUM

The United States respectfully submits this summary of the evidence it expects to present in its case-in-chief at the trial of defendant Jacob Parlin. The Honorable Leo T. Sorokin has scheduled jury selection to begin on Monday, November 27, 2023, and for testimony to commence the following day. Dkt. No. 493. The government expects to present its case-in-chief in about three days. The defendant is in custody.

This overview highlights the principal aspects of the upcoming trial and alerts the court to potential evidentiary issues. It is not an exhaustive recitation of the evidence the government intends to offer.

### I.  PROCEDURAL HISTORY

On December 7, 2021, the Grand Jury returned an indictment charging the defendant and several co-conspirators with various drug trafficking and firearms crimes. Dkt. No. 58. On the same day, the Honorable M. Page Kelley issued an arrest warrant for the defendant. Dkt. No. 64 at 27. Law enforcement officers arrested the defendant in his home state of Maine on December 22, 2021. Dkt. No. 64 at 2. The defendant was arraigned in the District of Maine the following day and entered not guilty pleas to the charges. Dkt. No. 64 at 3. The Honorable John H. Rich III ordered the defendant temporarily detained and, on December 29, 2021, ordered the defendant

detained as a flight risk and a danger to the community. Dkt. No. 64 at 3, 39. He further ordered the defendant transferred to the District of Massachusetts. Dkt. No. 64 at 40. The defendant was arraigned in the District of Massachusetts on January 12, 2022, and entered not guilty pleas to both counts. Dkt. No. 66.

## II. INDICTMENT CHARGES

### A. Summary of Charges

| Count | Description of Violation | Statutes | Date of Offense |
|---|---|---|---|
| 1 | Conspiracy to Distribute and to Possess with Intent to Distribute 50 Grams or More of Methamphetamine | 21 U.S.C. §§ 846, 841(a)(1) | March 2020 through May 2021 |
| 6 | Distribution of and Possession with Intent to Distribute 50 Grams or More of Methamphetamine; Aiding and Abetting | 21 U.S.C. § 841(a)(1); 18 U.S.C. § 2 | March 30, 2021 |

### B. Relevant Definitions and Terms

The drug trafficking statutes at issue in this trial are covered primarily by the government's suggested jury instructions. These instructions guide jurors in unanimously finding drug quantities when, as in Counts One and Six, a specific amount of at least 50 grams of methamphetamine is alleged. The government's proposed jury instructions address this issue and are a good-faith effort to ensure that the jury understands it must determine the drug quantity if it wishes to convict on Count One and/or Count Six.

## III. STATEMENT OF FACTS

At trial, the government's evidence will establish that the defendant knowingly conspired with codefendants Harry Tam, Vincent Duong, and others to distribute a controlled substance – specifically methamphetamine, and also that the defendant possessed methamphetamine with the

intent to distribute it. In both instances, the government prove that the defendant conspired to distribute and to possess with the intent to distribute more than 50 grams of methamphetamine.

The government will present evidence, including Title III wire interceptions, that the defendant knowingly participated in a methamphetamine distribution conspiracy. The government will offer foundation testimony regarding its application to intercept Tam's communications and a judge's authorization of those interceptions. Testimony and exhibits will refer to these wire interceptions, which indicate that the defendant was one of Tam's trusted partners and that he likely resold the product he obtained from Tam. The government will seek to enter the recordings as exhibits for the jury.[1] When necessary, testifying law enforcement officers will explain coded language commonly used in drug trafficking conspiracies and used by these co-defendants in their intercepted communications.[2] Additionally, the government will present law enforcement officer testimony regarding the background of the investigation.

Wire interceptions and other evidence, including that relating to a methamphetamine shipment seized from co-defendant Vincent Duong, will demonstrate the defendant's knowing participation in the methamphetamine distribution conspiracy. Several wire intercepts demonstrate the close business and personal relationship that Tam, Duong, and the defendant shared. For example, in one conversation intercepted on March 7, 2021, the defendant complained over the phone to Tam that the defendant was being "undercut" by a rival. Tam replied that he could offer the defendant lower prices, to which the defendant replied, "That's what I'm talking about, dude." Tam subsequently relayed the content of this conversation to Duong. These

---

[1] The government may prepare transcripts of the calls as a listening guide for the jury. However, the recordings are in English.
[2] For example, agents will testify that, based upon their experience and training, methamphetamine is often referred to as "tina."

interceptions demonstrate that Tam and the defendant were selling a price-sensitive product supplied by Tam and that Duong was also supporting the business. Other conversations show that Tam, Duong, and the defendant discussed how to procure a firearm for Duong. For example, on March 11, 2021, Duong told Tam that he had seen a "toy" in Maine that he wanted to buy. One minute later, Tam called the defendant and explained the situation. Tam and the defendant arranged that Duong would meet the defendant in New Hampshire, which he did later that evening.

Still other wire interceptions show that the defendant and Tam discussed a law enforcement seizure of nearly two kilograms of methamphetamine that had been shipped to Duong for use in the methamphetamine conspiracy. Witnesses will testify that, on March 12, 2021, law enforcement officers monitoring the wire heard Tam tell Duong that FedEx would be delivering a parcel to Duong's home shortly. Tam called Duong to ask whether the parcel had arrived and then to inform him that online tracking showed that it was, in fact, delivered. Duong told Tam that he would shower and then meet Tam. Agents later saw Duong leave the residence in his car, which they stopped. Duong consensually provided the unopened package to the agents. Lab analysis later confirmed that it contained nearly two kilograms of methamphetamine that tested 99 percent pure. After the seizure, wire interceptions recorded Tam telling the defendant about the lost package. "I lost a fucking big deal, dude," Tam said, adding, "I lost all of it." The defendant encouraged Tam to continue selling methamphetamine despite this setback. Tam affirmed his commitment to working with the defendant. The defendant and Tam discussed the quality of Tam's current methamphetamine supply, far superior to what Tam had received from a prior source. When the defendant told Tam to hold on to eight grams of methamphetamine, Tam informed that he had more product on the way and could make a large sum of money in several days, particularly because of the stress caused by Covid-19 restrictions.

4

The government will also present evidence that the defendant himself possessed methamphetamine for distribution.  Specifically, on March 30, 2023, Tam provided the defendant with about one kilogram of methamphetamine, which agents seized directly from the defendant shortly after midnight later that evening.  Witnesses will testify that, based upon wire interceptions, surveillance, and other law enforcement investigation, agents learned that the defendant planned to receive a supply of methamphetamine from Tam on March 30.  Wire interceptions will show that, earlier that day, Tam told the defendant that he was attempting to collect money from various people so that he could pick up product for the defendant.  As the day wore on, Tam told another associate that the defendant was angry because he had been waiting to obtain the methamphetamine from Tam.  The associate asked what the defendant was picking up, and Tam replied, "Drugs! Meth!"  Wire interceptions throughout the day traced Tam's obtaining eight pounds of methamphetamine and arranging to meet with the defendant.

Ultimately, the defendant called Tam to advise that he was outside of their meeting spot, the Farrington Inn in Boston, Massachusetts.  On the recorded line, Tam replied that he had "an open package" and needed a few more minutes.  Surveillance agents saw a black Chrysler 300 with Florida license plate DFTK46 pull up outside the residence and then saw Tam, holding a white bag, get into the rear passenger side of the car.  Shortly afterward, Tam got out of the car, and Chrysler car pulled away.  Surveillance units followed it north to Seabrook, New Hampshire.  During this trip, investigators saw the Chrysler perform multiple counter-surveillance measures to identify vehicles that might be following.  They also positively identified the defendant as the driver of the Chrysler.  Ultimately, at the direction of DEA agents, state deputies pulled the defendant over and saw, as he got out of the car, a white bag underneath the driver's seat.  A K-9 unit arrived and positively alerted on the front driver's door area.  Police later seized the white

bag.  Lab analysis confirmed that its contents were 882.8 grams of methamphetamine with a 100 percent purity.  Paperwork found in the car confirmed that the defendant had rented it.

## IV. WITNESSES

The government may call the following witnesses in its case-in-chief:

1. Detective Brian Sheehy, Boston Police Department
2. Detective Duane Danforth, Brookline Police Department
3. Sergeant Matthew McDonnell, Brookline Police Department
4. Detective Paul Callahan, Burlington Police Department, also a Drug Enforcement Administration Task Force Officer
5. Detective Paul Glejzer, Burlington Police Department
6. Chemist Hendri P. Chauca, Drug Enforcement Administration
7. Chemist Maolin Li, Drug Enforcement Administration
8. Sergeant Amie Le, Suffolk County Sheriff's Department Sergeant, also a Drug Enforcement Administration Task Force Officer
9. Detective Gregory Forestell, Melrose Police Department, also a Drug Enforcement Administration Task Force Officer
10. Sergeant Stephen P. Soares, Epping (New Hampshire) Police Department
11. Trooper Angela Guerrera, Massachusetts State Police
12. Trooper Dan Lawler, Massachusetts State Police
13. Deputy Lindsey Cunningham, Rockingham County Sheriff's Office
14. Deputy Michael Greeley, Rockingham County Sheriff's Office
15. Sergeant Stephen P. Soares, Rockingham County Sheriff's Office
16. Officer Tyler Houldsworth, Seabrook Police Department

Of these witnesses, only DEA forensic chemists Maolin Li and Hendri Chauca are witnesses whose testimony will be governed by Federal Rule of Evidence 702.  These chemists tested methamphetamine seized either from Vincent Duong or from the defendant himself.  The

government will promptly provide defense counsel with summaries of these witnesses' qualifications and proposed testimonies.

## V. EVIDENTIARY ISSUES

As noted, the government's witnesses will testify to intercepted and recorded statements. The government notes that statements made both by the defendant's coconspirators and in furtherance of the conspiracy are, by definition, not hearsay. Fed. R. Evid. 801(d)(2)(E). Therefore, oral and written statements intercepted by the Title III wire and made by Tam, Duong, and others are admissible against the defendant. The statements the defendant himself made are, also, not hearsay when offered by the government. Fed. R. Evid. 801(d)(2)(A). The government will object if the defendant makes any attempt to admit his own statements; they are hearsay. Fed. R. Evid. 801(c), 802.

If the defendant chooses to testify, the government may seek to impeach his testimony with statements he made to officers at the time of his March 31, 2021, arrest. The government understands that it previously conceded that it would not seek to introduce these statements as part of its case-in-chief. However, if the defendant takes the stand, the government may use the statements in its cross-examination. These statements include the defendant's response to New Hampshire state police, who asked him whether there was anything illegal in his car. The defendant responded, "A few pounds." The government may also seek to impeach the defendant's testimony with evidence of his 2007 felony convictions for trafficking in stolen property, first-degree burglary, aggravated assault, and criminal damage. Fed. R. Evid. 609(a)(1)(B),(b).

//
//
//

## VI. CONCLUSION

This brief is a summary of evidence and legal points that the government believes might arise at trial. Should others that have not been covered here or in other pretrial filings surface, the government respectfully requests leave to submit additional briefing.

Respectfully submitted,

JOSHUA S. LEVY
Acting United States Attorney

By: /s/ *Amanda Beck*
Amanda Beck
Nadine Pellegrini
Assistant United States Attorneys

## **CERTIFICATE OF SERVICE**

       I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants .

                                              __*/s/ Amanda Beck*_____
                                              Amanda Beck
                                              Assistant United States Attorney

Date: November 9, 2023