UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>VINCENT DUONG,<br><br>　　Defendant | CRIMINAL No. 1:21-CR-10350-10-LTS |

**GOVERNMENT'S SENTENCING MEMORANDUM**

　　The United States respectfully submits this Sentencing Memorandum in advance of the March 21, 2024, sentencing hearing scheduled for defendant Jacob Parlin ("the defendant"). On November 30, 2023, a petit jury unanimously convicted the defendant both of possessing with the intent to distribute and of conspiring to possess with intent to distribute 50 grams or more of methamphetamine, violations of 21 U.S.C. §§ 841(a)(1), 846. Dkt. No 536. These crimes require a mandatory minimum sentence of 10 years in prison. 21 U.S.C. § 841(b)(1)(A)(viii).

　　The final Presentence Report correctly calculates the defendant's Total Offense Level as 36. PSR ¶ 27. Based on the defendant's Criminal History Category, which is V, the PSR also correctly calculates his Guidelines range as 292 to 327 months. PSR ¶ 95.

　　For the reasons articulated below, the government respectfully requests that this court vary from this Guidelines range and sentence the defendant to 18 years – or 216 months – in prison. It also respectfully asks this court to sentence the defendant to five years of supervised release, a mandatory special assessment of $200, and forfeiture as set forth in the indictment. The government asks that the court not impose a fine, because the defendant does not have the means to pay.

**FACTS**

Drug Enforcement Administration special agents first learned of co-defendant Harry Tam's drug trafficking organization in about March 2020, when the results of a California federal search warrant suggested that Tam was receiving methamphetamine mailings at his business, a Midas Auto repair shop in Brookline, Massachusetts. The investigation culminated in 60 days of Title III wire interception, which ended in May 2021. Agents ultimately arrested nine defendants, from whom they collectively seized more than three kilograms of methamphetamine, about a dozen firearms, and about $95K in cash. Dkt. No. 10, Counts Seven – Eleven, Forfeiture Allegations. Drug analysis on the methamphetamine repeatedly tested between 96 and 100 percent pure.

The defendant was one of Tam's trusted business partners. At trial, wire interceptions demonstrated that the men worked together to distribute methamphetamine in Maine, where the defendant lived. In their arrangement, Tam procured methamphetamine from California and elsewhere. Then, Tam either had some of that methamphetamine delivered to Parlin, or Parlin drove down to pick it up. Finally, Parlin distributed the drug in his community. Parlin was ultimately arrested early in the morning of March 31, 2021, as he drove home from a meeting with Tam. PSR ¶¶ 8, 9. Law enforcement pulled his car over in a New Hampshire rest stop. PSR ¶ 9. Beneath Parlin's seat was a plastic bag containing about 880 grams of methamphetamine, which later tested 100 percent pure. PSR ¶ 9.

Wire interceptions had allowed law enforcement offers to plan for this transaction and to surveil it. PSR ¶¶ 8, 9. The intercepts also demonstrated that Tam and Parlin had, over the previous month, confided in and supported each other as they pursued their methamphetamine business. For example, when Parlin – *en route* to Massachusetts – complained about having been undercut by a business rival, he reassured Tam by saying, "But I got a plan, dude. I think that we

2

can fucking make some money." PSR ¶ 10; Trial Ex. 11.  Tam also offered "good news," by saying, "I'm about to hit you with a lower price."  PSR ¶ 10; Trial Ex. 11.  Similarly, when Tam was discouraged by law enforcement's seizure of a methamphetamine shipment, Parlin encouraged Tam by saying, "Don't stop yet, dude.  Wait a minute."  PSR ¶ 13; Tr. Ex. 19.  "I'm not," Tam replied, "I'm invested with you."  Tr. Ex. 19.  Parlin continued, "We can take over the whole game, dude, like up there … Just trust me."  PSR ¶ 13; Tr. Ex. 19.  "I keep walking with you, you keep walking with me," Tam echoed.  Tr. Ex. 19.  In other words, Parlin urged Tam to keep dealing and suggested that their business could expand north of Massachusetts; Tam agreed that the were "walking" with each other in their illicit business.

As an additional aggravating factor – and one that demonstrates the trust Tam and Parlin had in each other, the government notes that, at Tam's request, Parlin agreed to assist co-conspirator Vincent Duong in obtaining a new firearm.  On March 11, 2021, Duong told Tam, "I don't want a Glock 19, I want my 27."  Trial Ex. 12.  Later that evening, as Tam made arrangements for Duong to deliver methamphetamine to Parlin, Tam also asked Parlin if he would assist Duong in obtaining a firearm.  PSR ¶ 11; Trial Ex. 15.  Parlin agreed to do so, but his transaction did not occur, presumably because the targets became aware of police presence.  PSR ¶ 11.

## ARGUMENT

This court should sentence the defendant to 18 years in custody.  Three main arguments justify this sentence.  First, it avoids unwarranted sentencing disparities.  Second, it accounts for the defendant's criminal history and concerns that stem from that history.  Third, such a sentence would promote respect for the law, reflect the seriousness of the defendant's crime, and appropriately address other factors listed in 18 U.S.C. § 3553(a).

1. **A 216-Month Sentence Would Avoid Unwarranted Sentencing Disparities.**

First, an 18-year sentence would be consistent with the defendant's culpability relative to other co-defendants within this conspiracy. 18 U.S.C. § 3553(a)(6). The nine defendants arrested in this case were charged with crimes relating to methamphetamine distribution and firearms possession. All nine defendants have either pled guilty or been convicted. Five have been sentenced. The sentences or expected sentences of all defendants are outlined below.

| Defendant | Sentence |
|---|---|
| Harry Tam | *No plea agreement* – Initial probation Guidelines calculations suggest 360 months to life |
| Marcus Leyden | Sentenced to 180 months (Dkt. No. 463) |
| Tony Nguyen | *No plea agreement* – Initial probation Guidelines calculations suggest 135 to 188 months |
| Vincent Duong | Sentenced to 120 months (Dkt. No. 565) |
| Henry Vuong | Gov't will recommend MM of 120 months (Dkt. No. 390) |
| James Colamaria | Sentenced to 95 months (Dkt. No. 451) |
| Eli Sanders | Sentenced to 60 months (Dkt. No. 229) |
| Robert Ostrander | Sentenced to time served, about 25 months (Dkt. No. 507) |

As this table shows, these co-conspirators have been sentenced to a range of carceral periods. So far, 25 months is the shortest sentence ordered by this court, and 180 months is the longest sentence. The government expects to recommend a much longer sentence for co-defendant Tam, a career offender and the most culpable member of the conspiracy.

This range of sentences exists because the government has made a concerted effort to engage in plea agreements and to make sentencing recommendations that account for each defendant's individual culpability, especially in relation to his co-defendants. Acknowledging the

4

strength of its evidence, the government has recommended longer sentences for defendants from whom the government seized methamphetamine or a firearm or both.

Here, the government's investigation shows that the instant defendant is among the more culpable members of the conspiracy: He assisted in expanding the conspiracy's reach to a neighboring state and encouraged the conspiracy leader to keep dealing so that, as a team, they could reap the benefits of the operation. PSR ¶ 13. Parlin personally carried nearly a kilogram of methamphetamine across state lines so that he could distribute it. PSR ¶ 9. While the police intercepted his transport of this package, trial evidence demonstrated that this was not an aberrational incident; he had received other packages before. PSR ¶ 8. Moreover, Parlin agreed to assist another member of the conspiracy in obtaining a firearm. PSR ¶ 11.

The defendant's responsibility is less than that of Tam, who coordinated the entire operation, including transcontinental shipments of methamphetamine from his California suppliers, while illegally possessing more than a dozen firearms, including a ghost gun and one with an obliterated serial number. Given Tam's leadership role in this conspiracy, the government expects to request that he receive a sentence of 240 months or more.

So far, the next longest sentence issued in this case is for co-defendant Leyden, who received 180 months. The government believes that the instant defendant is more culpable than Leyden and should, therefore, receive a longer sentence. Leyden is less culpable than Parlin because Leyden was held responsible for only 131 grams of methamphetamine. In contrast, Parlin is being held responsible for nearly 20 times that amount, and he was arrested personally carrying nearly one kilogram, still much more than Leyden. Further, there is no evidence that Leyden participated in strategic conversations about expanding Tam's business, as Parlin did. The government acknowledges that Leyden was arrested with a firearm, which the government takes

seriously.  However, that does not significantly distinguish Leyden from Parlin, who agreed to assist co-conspirator Duong in obtaining a firearm.  In essence, both Leyden and Parlin participated in the armed aspect of this conspiracy.

In short, the government believes that a 216-month sentence would appropriately position and Parlin in relation to his co-defendants and their roles in these offenses.

### 2. A 216-Month Sentence Properly Addresses the Defendant's Criminal History.

Second, a 216-month sentence appropriately considers the defendant's criminal history. 18 U.S.C. § 3553(a),(a)(1).  In this analysis, it is helpful again to compare Parlin with Leyden.  The government considers Leyden's CHC VI similar to Parlin's CHC V.  However, the nature of their criminal histories is different.  Parlin's history is much more violent and includes repeated convictions for assault, threats, and domestic violence.  PSR ¶¶ 30, 31, 33, 37, 40, 44; *see also* PSR ¶¶ 49, 53, 57, 58, 60-63, 65.  Leyden's history is mostly one of identity, motor vehicle, and drug crimes, though his recent violent carjacking is a notable and concerning departure.  Still, the violent and physical differences in these co-conspirators' criminal histories is instructive and important to consider, because it speaks to the need to adequately deter Parlin's future criminal conduct and to protect the public from his further crimes.  18 U.S.C. § 3553(a)(2)(B),(C).

This difference is also further evidenced by their in-custody conduct.  Since his arrest, Parlin has received 11 disciplinary reports, including some for fighting and possessing a sharpened instrument.  PSR ¶ 4.  In contrast, Leyden had only one disciplinary report, issued because he refused a housing assignment.  This difference between the men is further evidence of the need for a higher sentence to address Parlin's different circumstances.  Parlin is violent and has been a serious threat to others; his incarceration seemingly has yet to convince him to respect the law.  18 U.S.C. § 3553(a)(2)(A).  The government hopes that an 18-year sentence, undoubtedly long but still significantly below-Guidelines, is "sufficient but not greater than necessary" to protect the

public from his further crimes and to, in some way, recognize the obvious hardship that he tragically and inexcusably faced as a child. 18 U.S.C. § 3553(a), (a)(2)(C); PSR ¶ 68.

### 3. A 216-Month Sentence Would Properly Address the Other 3553(a) Factors.

A 216-month sentence would also properly address the other factors this court must consider. The recommended sentence would reflect the seriousness of this offense and afford adequate deterrence to other people who may consider participating in an armed drug trafficking conspiracy. 18 U.S.C. § 3553(a)(2)(A)-(B). Such a sentence would also account for the nature and circumstances of this offense, which involved the illegal trans-continental shipment of dangerous controlled substances and their distribution in our community and others by armed drug traffickers. 18 U.S.C. § 3553(a)(1).

### CONCLUSION

The government respectfully requests that this court sentence the defendant to 216 months in custody, a 5-year period of supervised release, a $200 special assessment, and forfeiture as described in the indictment.

Respectfully submitted,

JOSHUA S. LEVY
Acting United States Attorney

By:   /s/ *Amanda Beck*
AMANDA BECK
NADINE PELLEGRINI
Assistant United States Attorneys

**CERTIFICATE OF SERVICE**

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants .

                                            */s/ Amanda Beck*
                                            Amanda Beck
                                            Assistant United States Attorney

Date: March 15, 2024