Exhibit B

Case 1:23-cr-10351-TS   Document 60-2   Filed 08/09/24   Page 2 of 29
Case 1:17-cr-10063-DJC   Document 77   Filed 12/22/17   Page 1 of 28

1

```
 1                    UNITED STATES DISTRICT COURT
                        DISTRICT OF MASSACHUSETTS
 2

 3       _____

 4    UNITED STATES OF AMERICA,

 5                       Plaintiff,        Criminal Action
                                           No. 17-10063-DJC
         V.
 6                                         November 29, 2017
       PETER LOBO,                         2:01 p.m.
 7
                        Defendant.
 8       _____

 9

10

11                   TRANSCRIPT OF SENTENCING

12            BEFORE THE HONORABLE DENISE J. CASPER

13                UNITED STATES DISTRICT COURT

14            JOHN J. MOAKLEY U.S. COURTHOUSE

15                   1 COURTHOUSE WAY

16                   BOSTON, MA   02210

17

18

19

20              DEBRA M. JOYCE, RMR, CRR, FCRR
                     Official Court Reporter
21              John J. Moakley U.S. Courthouse
                1 Courthouse Way, Room 5204
22                   Boston, MA   02210
                     joycedebra@gmail.com
23

24

25
```

**EXHIBIT 2**

Case 1:23-cr-10361-TS   Document 502-2   Filed 03/09/24   Page 2 of 29
Case 1:17-cr-10063-DJC   Document 77   Filed 12/22/17   Page 2 of 28

2

```
1    APPEARANCES:

2    FOR THE GOVERNMENT:

3    THEODORE B. HEINRICH, ESQ.
     United States Attorney's Office
4    John Joseph Moakley Federal Courthouse
     1 Courthouse Way
5    Suite 9200
     Boston, MA 02210
6    617-748-3245

7    FOR THE DEFENDANT:

8    STYLIANUS SINNIS, ESQ.
     Federal Public Defender Office
9    District of Massachusetts
     51 Sleeper Street
10   5th Floor
     Boston, MA 02210
11   617-223-8061

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Case 1:22-cr-10051-TS Document 90-2 Filed 08/09/24 Page 4 of 29
Case 1:17-cr-10063-DJC Document 77 Filed 12/22/17 Page 3 of 28

3

```
 1                        P R O C E E D I N G S

 2                   (The following proceedings were held in open

 3       court before the Honorable Denise J. Casper, United States

 4       District Judge, United States District Court, District of

 5       Massachusetts, at the John J. Moakley United States Courthouse,

 6       1 Courthouse Way, Boston, Massachusetts, on November 29.

 7                   The defendant, Peter Lobo, is present with counsel.

 8       The Assistant U.S. Attorney is present.)

 9                   THE CLERK:  Court is in session.  Please be seated.

02:01 10            THE COURT:  Good afternoon.

11                   Mr. Sinnis, I understand there may be an elevator

12       issue.

13                   Maybe it's been resolved.  Okay.

14                   MR. SINNIS:  Thank you, your Honor.  You.

15                   (Discussion off the record.)

16                   THE CLERK:  Criminal action 17-10063, United States v.

17       Peter Lobo.

18                   Would counsel please state your name for the record.

19                   MR. HEINRICH:  Good afternoon.  Ted Heinrich for the

02:02 20       government.

21                   THE COURT:  Good afternoon, counsel.

22                   MR. SINNIS:  Good afternoon, your Honor.  Stelio

23       Sinnis for Mr. Lobo.

24                   THE COURT:  Good afternoon, counsel.

25                   Good afternoon, sir.
```

Case 1:22-cr-10351-TS   Document 502-2   Filed 03/19/24   Page 5 of 29
Case 1:17-cr-10063-DJC   Document 77   Filed 12/22/17   Page 4 of 28

4

1    Counsel, Mr. Lobo, I know we're here for sentencing.

2  Before we begin, I want to make sure I have all of the written

3  materials you wanted me to review.

4    I've received and reviewed the presentence report as

5  revised November 27th.  I've received Mr. Sinnis' memo on

6  behalf of Mr. Lobo filed November 22nd, including some exhibits

7  and some letters of support.  I believe those are all the

8  written materials I have, counsel; is that correct

9    MR. HEINRICH:  That's correct your Honor.

02:02 10    MR. SINNIS:  Your Honor, if I may hand up one more

11  thing.  I notice in some of the cases that I have cited a

12  reference to a DEA intelligence report that dealt with the

13  purity levels of methamphetamine.  So I provided a copy to

14  Mr. Heinrich.  Specifically, when I do address it, it will be

15  on page 4.

16    THE COURT:  Thank you, counsel.

17    Counsel, just to begin with the presentence report.

18    Mr. Sinnis, have you reviewed that with your client,

19  Mr. Lobo?

02:03 20    MR. SINNIS:  Yes, your Honor.

21    THE COURT:  And in regards to the guidelines

22  calculations and the Criminal History Category calculation, I

23  don't believe there were objections from either side; is that

24  correct?

25    Mr. Sinnis?

Case 1:22-cr-10051-TS Document 62-2 Filed 08/09/24 Page 6 of 29
Case 1:17-cr-10063-DJC Document 77 Filed 12/22/17 Page 5 of 28

5

```
 1              MR. SINNIS:  That's correct, your Honor.
 2              THE COURT:  Mr. Heinrich?
 3              MR. HEINRICH:  Correct, your Honor.
 4              THE COURT:  Mr. Heinrich, is the government's position
 5    that Mr. Lobo has satisfied the safety valve?
 6              MR. HEINRICH:  Yes, your Honor.
 7              THE COURT:  Okay.  So with that said, and having
 8    reviewed the calculation in the presentence report, I will
 9    adopt the adjusted total offense level reflecting the safety
10    valve of 31, a Criminal History Category of I, which I believe
11    then leads to an advisory guideline sentencing range of 108 to
12    135 months, supervised release range of one to three years, a
13    fine range of $30,000 to $1 million, and a special assessment
14    of $100.
15              Counsel, was there any forfeiture sought here by the
16    government?
17              MR. HEINRICH:  That's not an issue here, your Honor.
18              THE COURT:  Counsel, just give me one moment.
19              (Pause.)
20              THE COURT:  And I'm correct that there isn't a minimum
21    mandatory sentence here?
22              MR. HEINRICH:  That's correct, your Honor.
23              THE COURT:  Okay.
24              Counsel, I will hear your respective recommendations.
25              Mr. Heinrich.
```

Case 1:22-cr-10031-TS Document 90-2 Filed 03/04/24 Page 7 of 29
Case 1:17-cr-10063-DJC Document 77 Filed 12/22/17 Page 6 of 28

6

1    MR. HEINRICH: Thank you, your Honor.

2    The government officially recommends a sentence at the

3    low end of the guideline range, that would be 108 months or

4    nine years' imprisonment. That's not without its ambiguities,

5    and there's certainly -- if the Court steps back and looks at

6    the factors of this case, I think there are at least some

7    factors that the Court may want to consider in terms of

8    determining an appropriate sentence.

9    First, I'll say that I think it's apparent to the

02:05 10   Court that this was what you might call a quick hit, an

11   efficient prosecution and investigation for that matter.

12   The downside of that is that this wasn't a typical

13   lengthy federal investigation where you might have a lot of the

14   background information that would assist the Court in assessing

15   Mr. Lobo's character and his culpability in this offense.

16   Certainly we know that he could produce in his sole possession

17   $32,000 worth of crystal meth on relatively short order. We

18   may realistically infer that he -- that this was not his only

19   offense and that he was well connected. But beyond that, we

02:06 20   don't really know a whole lot and we're left to speculate, and

21   the Court certainly doesn't want to ground a sentence on

22   speculation.

23   THE COURT: What do you say to your brother's argument

24   in the sentencing memo that it actually took him some time

25   between I think the initial conversations with the undercover

1    in July and then the final -- what's the consummation I think

2    in two transactions in December.

3          MR. HEINRICH:  About that I would just point out to

4    the Court that after July, based on the parallel investigation

5    that was going on in San Diego, Massachusetts agents were asked

6    to back down, and they actually related that to Mr. Lobo.  So

7    part of that, you know, at least until the meetings in October,

8    November, was a consequence of the DEA telling Mr. Lobo that

9    things were on hold.

02:07 10          There was some delay during the periods in October,

11   November on into the actual transactions in December, but I

12   personally don't view that as anything other than the typical

13   drug business, where there are starts, stops, and starts,

14   particularly where you're dealing with this amount of pure

15   substance, doesn't strike me as anything out of the ordinary.

16          THE COURT:  Mr. Heinrich, if the government had

17   evidence that Mr. Lobo was otherwise on the radar screen of law

18   enforcement, I assumed I would have heard about it.

19          MR. HEINRICH:  Well, I don't want to taint your Honor,

02:08 20   and I don't want to mischaracterize anything, but I also don't

21   want to mislead your Honor.

22          Mr. Lobo has been on law enforcement's radar screen.

23   He has not been able to be successfully investigated until now.

24   Part of the reason that they sort of did this quick hit was

25   because they had been unsuccessful in the past.  I don't think

<pre>
 1    any of those past investigations had provided the government

 2    with information that would assist the Court in assessing

 3    Mr. Lobo.  So on the one hand, the Court is right, if we had

 4    concrete information, you would have heard about it.  I can't

 5    say that he wasn't on law enforcement's radar screen.

 6            A couple of other factors that the Court may wish to

 7    consider.

 8            I actually was struck by counsel's argument on the

 9    disparity or the relatively harsh treatment on methamphetamine.

02:09 10    Methamphetamine, particularly crystal meth or very pure

11    methamphetamine, is certainly a dangerous drug, and more

12    particularly out west.  In the east, heroin and then

13    particularly fentanyl, are the primary dangerous drugs that are

14    really driving the opioid crisis and causing the most danger,

15    disruption, death.  But I think those three are fairly

16    characterized as very dangerous drugs.  It surprised me to see

17    that crystal methamphetamine was treated more harshly than even

18    fentanyl, which is preeminently the most dangerous drug threat

19    facing this district.

02:10 20            If it had been a comparable amount of fentanyl, the

21    base offense level would have been four levels lower and the

22    guideline range would have been in the neighborhood of six to

23    seven years rather than nine to 11.  So I think that that's a

24    fair factor to take into account.

25            The only other factors that I would mention are I
</pre>

|     |     |
| --- | --- |
| 1 | think Mr. Sinnis is right to emphasize the defendant's age.   I |
| 2 | think it is -- |
| 3 | THE COURT:  Fifty-four. |
| 4 | MR. HEINRICH:  Makes it less likely that after a |
| 5 | significant sentence he will be able to re-establish his |
| 6 | criminal conduct. |
| 7 | There was no evidence of violence. |
| 8 | And I do think that it's worth reemphasizing Mr. Lobo |
| 9 | made no bones about the fact that he was caught, caught fairly, |
| 02:11 10 | and would be pleading guilty in this case.  And it did not |
| 11 | require the government to expend any additional evidence beyond |
| 12 | customary discovery in order to bring this case on Mr. Lobo's |
| 13 | part to a resolution. |
| 14 | So for all those reasons, although I don't think that |
| 15 | the defendant's recommendation is a reasonable one, I do think |
| 16 | that the Court would not be unreasonable in considering a |
| 17 | degree of mercy for Mr. Lobo based on all the facts and |
| 18 | circumstances. |
| 19 | I'd be happy to answer any questions the Court may |
| 02:11 20 | have. |
| 21 | THE COURT:  Thank you, counsel. |
| 22 | Mr. Sinnis. |
| 23 | MR. SINNIS:  Thank you very much, your Honor. |
| 24 | I think I'd like to talk about three things but start |
| 25 | with the guideline because I share Mr. Heinrich's shock, |

Case 1:22-cr-10301-TS Document 502-2 Filed 08/09/24 Page 10 of 29
Case 1:17-cr-10063-DJC Document 77 Filed 12/22/17 Page 10 of 28

10

1   really, at where the guideline ended up.  I think part of that

2   is because we don't see methamphetamine cases in this district.

3   Thirteen years at the Federal Defender's Office, and in all

4   candor, this is my first methamphetamine case.  So I hadn't had

5   opportunity to kind of focus on that guideline, and when I did,

6   I was struck by it.  And I guess I would address my argument to

7   two different points of the guideline, one is the issue of the

8   purity, and the other is the issue of excessiveness.

9          As I pointed out in my memorandum, the Sentencing

02:12 10   Commission in application note 27(C) talks about purity being

11   some sort of a marker for culpability in the sense of

12   potentially being higher up on the chain of distribution.  And

13   I think what I saw in the cases that I found from districts

14   where methamphetamine is a much more common drug, such as New

15   Mexico, Idaho, and some of the other cases I point out, is

16   judges are starting to take a very skeptical view of that

17   because they are seeing just in their courtrooms that the

18   purity of methamphetamine now is pretty much unadulterated.

19          I apologize for not giving this to the Court or

02:13 20   Mr. Heinrich before today, but I did notice in preparing for

21   today that one of the courts cited the DEA intelligence report,

22   and it's remarkable, quite frankly, that in this -- this is

23   page 4 of the chart that I handed up to your Honor.

24          THE COURT:  I have it.

25          MR. SINNIS:  -- that in 2007, all methamphetamine

| | |
|---|---|
| 1 | confiscated by the DEA during undercover operations had a 38.7 |
| 2 | percent purity; and as of 2013, the last year they did the |
| 3 | STRIDE report, it was 94 percent purity.  So under the |
| 4 | guidelines, anything above an 80 percent purity is treated |
| 5 | significantly more harshly than something below 80 percent, and |
| 6 | now what you're finding is that purity is simply what it is |
| 7 | today. |

8       THE COURT:  Meaning -- right.  Meaning that most meth

9 on the market is pure.

02:14 10       MR. SINNIS:  Correct.

11       THE COURT:  Okay.

12       MR. SINNIS:  And I would go as far as to say not just

13 most, virtually all is what you're hearing.  In the case of --

14 in the Hartle case out of Idaho, the judge there cites a

15 2015-2016 survey of all meth cases in the District of Idaho,

16 and the purity level was 92.6 percent.  So basically any

17 assumption or anything of value to be gleaned from the

18 guidelines' view that purity signifies a more significant role

19 I think is undercut by that.

02:15 20       And if you were to take the purity enhancement, for

21 lack of a better word, out of this case, what you would have is

22 a guideline range of 70 to 87 months if you looked at it from

23 the mixture analysis of methamphetamine, which I think I

24 discuss in my memorandum.  I tried to do it by a chart, because

25 I find that easier.

Case 1:22-cr-10361-TS   Document 50-2   Filed 08/29/24   Page 13 of 29
Case 1:17-cr-10063-DJC   Document 77   Filed 12/22/17   Page 12 of 28

12

1         So that's on page 11.

2         His range would be 70 to 87 months.

3         So I do think that the Court should consider that

4    aspect of it.

5         And then, secondly, I think is just the general

6    excessive nature of the methamphetamine guideline.  It stunned

7    me that it's 100 times more severely punished than cocaine.  So

8    to get where he is now under the guidelines, Mr. Lobo would

9    have had to sell 150 kilos of cocaine to get to the starting

02:16 10   point of a level 36.  Or he would have -- it's 20 times more

11   severely punished, as Mr. Heinrich pointed out, than heroin.

12   So he would have had to sell 30 kilos of heroin to get to this

13   level.  Again, I think there's a general excessiveness to that.

14        You know, the cases that I cite in my memo, the judges

15   seem to be kind of taking two different positions, either

16   discounting for purity down to the mixture level, or

17   discounting the guideline in some percentage way.  I think it

18   was the Hayes case where the judge discounted the guideline by

19   33 percent, which basically brings you to the same point as the

02:16 20   mixture level, which is 70 to 87 months.

21        I kind of equate this -- and I didn't put this in my

22   memo, and I don't know what your Honor's practice is because I

23   haven't actually had any types of these cases with your Honor,

24   but many of your colleagues in possession of child pornography

25   cases kind of create what some of them have referred to as a

Case 4:22-cr-10063-TS   Document 105-2   Filed 08/09/24   Page 14 of 29
Case 1:17-cr-10063-DJC   Document 77   Filed 12/22/17   Page 13 of 28

13

```
 1    shadow guideline, which takes out the use of a computer, takes
 2    out the number of images, takes out --
 3               THE COURT:  Which I've done in some regard.
 4               MR. SINNIS:  Okay.
 5               THE COURT:  At least as to the use of computers,
 6    counsel.
 7               MR. SINNIS:  So I know Judge O'Toole, Judge Saylor,
 8    Judge Hillman, which I've had personal experience in front of,
 9    have created this what Judge O'Toole calls a shadow guideline,
10    and sentences kind of as a starting point off of that.
11               So I guess my view here is that this guideline calls
12    for kind of a similar approach from your Honor, and I would
13    think that the shadow guideline would be here more the mixture
14    or if it was the equivalent of heroin, say, so that would bring
15    us to a 70 to 87 range, which I think as a starting point
16    really is a much more reasonable position for someone of
17    Mr. Lobo's age, lack of criminal history, potential future
18    recidivism.  I think the 70 to 87 range as opposed to the 108
19    to 135 is a more reasonable starting point.
20               So I would ask your Honor to consider that very
21    strongly with regard to the methamphetamine guideline.
22               Second of all, and I lay it out in my memorandum, I
23    don't feel I need to belabor it here, I agree with
24    Mr. Heinrich -- and I didn't mean to mislead anybody -- that
25    that July to kind of October, I think it's early October time
```

Case 1:22-cr-10301-TS Document 103-2 Filed 08/09/24 Page 15 of 29
Case 1:17-cr-10063-DJC Document 77 Filed 12/22/17 Page 14 of 28

14

```
 1    period, there seems to be kind of radio silence there in the
 2    discovery materials that the government has provided me.  There
 3    don't seem to be any phone calls or don't seem to be any text
 4    messages between Mr. Lobo and the undercover agent involved in
 5    this case.  But then starting in October, there is extensive
 6    communication between Mr. Lobo and that agent, and there are a
 7    lot of fits and starts to this endeavor.
 8              I guess the only place I really differ with
 9    Mr. Heinrich is what's the view of that?  I don't think that's
10    the norm.  I think there were a lot of -- there was a lot of
11    delaying of the delivery because of an inability to put his
12    hands on the substance.  All of this being said, I mean, it's
13    obviously a serious crime.  I'm not trying to downplay that the
14    sale of four pounds of crystal meth is not a very serious
15    crime, it is an exceptionally serious crime, but I think it
16    needs to be put in the context of how the crime was committed
17    and also how that is viewed vis-a-vis other controlled
18    substances which do very similar harm to members of the
19    community.  That's one of the reasons I -- I know that chart
20    was a little more garbled but I tried to pull that cite with
21    regard to emergency room visits and things of that nature with
22    regard to amphetamines being less treated in that capacity than
23    heroin and/or cocaine.
24              So I do think that the nature of the offense itself is
25    also a reason for your Honor to consider a substantially lower
```

Case 1:22-cr-10061-TS Document 105-2 Filed 08/09/24 Page 16 of 29
Case 1:17-cr-10063-DJC Document 77 Filed 12/22/17 Page 15 of 28

15

    1    sentence than where the guideline range comes out in this case.

    2              And then, finally, and of equal significance, is

    3    Mr. Lobo himself.  You've read the letters.  You see the people

    4    here today who are all here supporting him.  His three sons are

    5    here, his long-time friend and former partner, Maureen, is

    6    here, many other friends and family are here.  He has two

    7    younger children out in California who obviously were not able

    8    to be here, two daughters.

    9              And, you know, his life has kind of been different

02:21 10    stages.  There is that initial horrific tragedy of his first

    11    wife passing away when the boys are quite young.  I think the

    12    youngest was two.  And she passed away.  And then he rebuilt

    13    another life with Maureen, who in everything but legal terms

    14    adopted those boys, and she is their mother until this day, and

    15    she is a big part of Mr. Lobo's life until this day.  Then he

    16    went to California, lived there for a considerable period of

    17    time and married Irma and had two daughters, but fell on hard

    18    times.  You know, what's not in this PSR, unfortunately,

    19    because the Probation Department, for a good reason, only goes

02:22 20    back ten years, is that he had a very successful career for a

    21    long time being a project manager building outlet stores for

    22    Tommy Hilfiger and other companies, and he did that for a very

    23    long period of time.

    24              THE COURT:  So that's before two thousand --

    25              MR. SINNIS:  Before 2007, your Honor.

Case 1:22-cr-10351-TS   Document 92-2   Filed 03/29/24   Page 16 of 29
Case 1:17-cr-10063-DJC   Document 77   Filed 12/22/17   Page 16 of 28

16

1        When did you stop there?

2        THE DEFENDANT:  2005.

3        MR. SINNIS:  2005.

4        And he fell on some hard times in California.  His

5   oldest son Peter came to live with him roughly in 2014 and

6   spent about two years with him and the two girls, and they all

7   lived together.  And then Peter returned to the East Coast

8   roughly three months before this sale was consummated, and that

9   put Mr. Lobo in a much worse financial position because, quite

02:22 10   frankly, Peter, Jr. was helping support Mr. Lobo and the girls.

11        But as a 54-year-old man who, even under the sentence

12   we're recommending, will be under some federal supervision

13   until 61, I think the risk of recidivism is exceedingly low, if

14   not zero.  So to me, it really is a matter of what is the just

15   punishment for this offense?  Out of all the criteria that your

16   Honor is supposed to focus on, I think that is the one that

17   comes into play.  And I simply just feel very strongly that

18   anything even in the neighborhood of the 108 months is much

19   more than is necessary in this particular case under these

02:23 20   particular facts, and I would urge your Honor to use as a

21   starting point the 70- to 87-month range, and then I think

22   there are very valid reasons to go even lower than that.

23        And so I would urge you to adopt our recommendation of

24   42 months, followed by three years of supervision.  Obviously I

25   would ask that you not impose a fine.  I don't think the

Case 2:22-cr-10631-TS Document 5D5-2 Filed 08/09/24 Page 18 of 29
Case 1:17-cr-10063-DJC   Document 77   Filed 12/22/17   Page 17 of 28

17

```
 1   government is seeking a fine.  And I think that's a fair and
 2   reasonable sentence given all of the factors of this case, your
 3   Honor.
 4              THE COURT:  Okay.
 5              (Pause.)
 6              THE COURT:  I'm sorry, I just paused for a moment.
 7              Mr. Heinrich, would Mr. Lobo be supervised out of this
 8   court?  Is that what's anticipated?
 9              MR. SINNIS:  Yes.
10              MR. HEINRICH:  Yes.
11              MR. SINNIS:  I think he's asking to stay here
12   following his release, yes.
13              THE COURT:  Okay.
14              My apologies, Mr. Lobo.  I'll hear you now.
15              THE DEFENDANT:  First, I'd like to say I accept
16   responsibility for what I've done.  And the remorse I have, I
17   live with it every day, and I want to apologize to my family
18   for what I've done.  I can't do anymore.
19              THE COURT:  Thank you.
20              Mr. Lobo, I appreciate the statement.  I'll consider
21   that along with all of the other evidence I have in the record.
22              Counsel, Mr. Lobo, I'm going to take a recess.
23              I just would ask -- I see Probation represented here.
24   My recollection is -- I'm not sure I've had any or if I've had
25   any meth cases, they've been few and far between.  Are there
```

02:24 (line 10)
02:25 (line 20)

Case 1:22-cr-10531-TS   Document 502-2 Filed 08/29/24 Page 19 of 29
Case 1:17-cr-10063-DJC   Document 77   Filed 12/22/17   Page 18 of 28

18

1    average stats on those sentences?  Are they just so few and far

2    between in this district that we don't know what they are?

3              PROBATION OFFICER:  Off the top of my head there's

4    only one or two cases I can think of.  I don't know about the

5    number of cases.  There's not much --

6              THE COURT:  Counsel, since I've asked Probation that

7    question, Mr. Sinnis, do you know the answer to that question?

8              MR. SINNIS:  What I can tell your Honor, we do keep a

9    sentencing database at the Federal Defender's Office with

10   regard to, as best as we can, almost all sentences that are

11   imposed.  And I did search that, and what I came up with was

12   roughly 12 methamphetamine cases that have been sentenced in

13   this district.  I believe five of them were co-defendant cases

14   in front of Judge Young, and the sentences varied -- and I

15   wasn't able -- varied greatly from kind of in the 24-month up

16   to like 151-month range, but I'm only able to access certain

17   amounts of information.  So it was hard for me to glean

18   anything.  But there's just -- I will say I did not find any

19   case in our database, any methamphetamine case that your Honor

02:26  20   had sentenced.

21             THE COURT:  Mr. Heinrich, anything to add on that

22   point?

23             MR. HEINRICH:  Not much.  I've had one other

24   methamphetamine case.  It was very different than this.  It

25   involved a person trying to make his own methamphetamine.

1     I do remember one case, and it's probably the case

2     before Judge Young, that was a significant meth case, but I

3     don't remember the sentences that were imposed.

4           THE COURT:  Thank you.  I'll take a brief recess and

5     come back to the bench.  Thank you.

6           THE CLERK:  All rise.

7           (Recess taken.)

8           THE COURT:  Counsel, Mr. Lobo, I appreciate counsel's

9     arguments and responses to my questions today.

02:37 10        As I said, Mr. Lobo, I've also considered your

11    statement and the letters I received from your former partner

12    and your children, along with all of the other information I

13    have in the record here.

14          Mr. Lobo, as you may understand, to determine the

15    appropriate and reasonable sentence here, I need to consider a

16    number of factors, not just the advisory guideline sentencing

17    range that you've heard me discuss with counsel, but the nature

18    and circumstances of the crime that you committed and your

19    personal history and background, as well as the need for any

02:37 20   sentence I impose to reflect the seriousness of that offense;

21    promote respect for the law, not just by you, but by others as

22    well; provide just punishment and adequate deterrence, again,

23    not just for you, but for others; and avoid unwarranted

24    sentencing disparities; all of the factors under Title 18,

25    United States Code 3553(a).

Case 1:22-cr-10031-TS   Document 502-2   Filed 08/09/24   Page 21 of 29
Case 1:17-cr-10063-DJC   Document 77   Filed 12/22/17   Page 20 of 28

20

          1           Mr. Lobo, I'm not going to repeat everything that

          2     Mr. Heinrich and Mr. Sinnis have referenced in the course of

          3     this hearing or everything that was reflected in your

          4     presentence report, but I do want to mention a few things.

          5           First, obviously, I've considered the crime that

          6     you've committed here and for which you've accepted

          7     responsibility:  distribution and possession with intent to

          8     distribute crystal methamphetamine.  It's not disputed that you

          9     sold four pounds to an undercover agent in the course of I

02:38    10     believe it was two transactions in December.  There was some

         11     early meetings with the undercover agent, but the consummation

         12     of those came later on.

         13           Certainly, as I think Mr. Sinnis acknowledges on your

         14     behalf, this is a serious crime.  I know from at least one of

         15     the letters that one of your family members sent to me, I think

         16     drug addiction has, sadly, touched your own family, so I don't

         17     have to lecture to you about the harms and the dangers caused

         18     by drug distribution.

         19           I've also considered not just the crime that you

02:39    20     committed here, but also your personal history.

         21           I know that you're -- I believe, if I'm recalling

         22     correctly, you're 54 years old.  You were born in New Bedford.

         23     You lived in New Bedford for a while, then Dartmouth,

         24     Massachusetts, and then at some point you lived outside of

         25     state when you were attending college in the south, and

Case 1:22-cr-10031-TS   Document 505-2   Filed 08/09/24   Page 22 of 29
Case 1:17-cr-10063-DJC   Document 77   Filed 12/22/17   Page 21 of 28

21

1   eventually found your way to California.

2          You yourself growing up had what was, by your own

3   description, a stable and intact family.  You have several

4   siblings.  I think your parents and your siblings live in the

5   Massachusetts area, if I'm recalling correctly.

6          As one of your sons recounted in his letter to me, and

7   as Mr. Sinnis referenced today, sadly, your first wife passed

8   away when your three sons were young, and you were on your own

9   for a time.  You did end up remarrying.  In addition to the

02:40 10   three boys who are in their 20s, I'm also aware that you have

11   two young daughters, 11 and 13, both of whom wrote to me on

12   your behalf.

13          I understand you're a high school graduate.  You did

14   not receive a college degree but did attend college for a few

15   years.

16          As of 2016, leading up to your arrest in California,

17   as I've heard on your behalf, you hit some rough times

18   financially speaking.  Earlier in your life you had had a

19   successful career and job as a project manager, and then for a

02:41 20   time I think you sold cars for resale in Mexico and had more

21   recently a series of odd jobs in construction and also with

22   cars.

23          I also understand from the presentence report you

24   yourself have struggled with drug use, most recently with

25   cocaine, and I think Probation recommends that you be

Case 4:22-cr-10031-TS   Document 92-2   Filed 08/09/24   Page 22 of 29
Case 1:17-cr-10063-DJC   Document 77   Filed 12/22/17   Page 22 of 28

22

1    recommended for the Residential Drug Treatment Program while

2    you're incarcerated, which I think is an appropriate

3    recommendation.

4         I've certainly considered the circumstances, financial

5    circumstances, in which you found yourself, which appears to

6    coincide with your involvement in the transaction that leads

7    you here and for which you are charged.

8         I've also noted what I think both sides describe as

9    not just your acceptance of responsibility, but your prompt --

02:42 10   your prompt and early acceptance of responsibility which I have

11   considered.

12        In terms of your criminal history, you don't have a

13   criminal history, and you've not -- at least by my memory, have

14   not served any periods of incarceration prior to your detention

15   in this matter.

16        Third, Mr. Lobo, I've considered the advisory

17   guideline sentencing range of 108 to 135 months.  You've heard

18   the government recommends a sentence at the low end of that

19   range of 108 months.  Mr. Sinnis recommends a sentence

02:42 20   significantly lower than that on your behalf.

21        I think, as Mr. Heinrich recognizes, the argument

22   Mr. Sinnis makes on your behalf in regards to what the

23   appropriate range should be is persuasive to me.  I will say I

24   did consider the materials that were attached to the sentencing

25   guidelines, and I did have a chance to also consider the chart

1    that Mr. Sinnis produced today.  That is, that, Mr. Lobo, to

2    the extent there was an enhancement because of the purity of

3    the methamphetamine, which now appears to be the market

4    standard, I don't think that enhancement or that further

5    enhancement is appropriate here.  And I do think the more

6    reasonable range for me to consider is the 70- to 87-month

7    range, which reflects the range for a mixture including

8    methamphetamine.  So I'll consider that as the appropriate

9    advisory guideline sentencing range.

02:43 10    Finally, Mr. Lobo, I've considered all of the goals of

11    sentencing that I've referred to before, not just the

12    seriousness of your offense and the need for there to be a just

13    punishment, but also the need for deterrence.  Although

14    methamphetamine is not a drug that we often see in this

15    district, or at least in my experience, I don't think there's

16    any dispute that the dangers from meth use or from the dangers,

17    likewise, from the distribution of methamphetamine.

18    I do think it's appropriate, however, in considering

19    the low end of the adjusted guideline sentencing range that I

02:44 20    also consider that that range does reflect the affect of the

21    safety valve and your criminal history but not all of the other

22    mitigating factors which I think both sides recognize, given

23    your age and the likelihood of recidivism by you, and what I

24    would call aberrant behavior here and early acceptance of

25    responsibility.

Case 4:22-cr-10365-TS   Document 502-2   Filed 08/09/24   Page 25 of 29
Case 1:17-cr-10063-DJC   Document 77   Filed 12/22/17   Page 24 of 28

24

1          For all of these reasons, I think a substantial

2     sentence, but not one in the range of 108 months, is

3     appropriate.

4          For all of these reasons, I'm going to impose a

5     sentence of 60 months of incarceration, three years of

6     supervised release, no fine, but the mandatory special

7     assessment of $100.

8          I do think, Mr. Lobo, given all that's before me, this

9     is a sufficient sentence, but not one greater than necessary,

02:45 10    to achieve all of the goals of sentencing that I've mentioned.

11          Counsel, anything that you need to be heard on before

12    I formally impose sentence?

13          Mr. Heinrich?

14          MR. HEINRICH:  No, your Honor, thank you.

15          MR. SINNIS:  Just two things, your Honor.  One you

16    reminded me of, which we would be asking for the RDAP

17    recommendation; and two, your Honor, I don't know if your Honor

18    does make judicial recommendations in terms of placements, but

19    we would ask for the camp at Fort Devens, obviously based upon

02:46 20    the Bureau's consideration of other security factors, but that

21    would be our recommendation.

22          THE COURT:  Mr. Heinrich, do you need to be heard?

23          MR. HEINRICH:  No, your Honor.

24          THE COURT:  Counsel, in addition, I just want to -- I

25    know in the presentence report there were recommendations as to

Case 1:22-cr-10063-TS   Document 105-2   Filed 08/09/23/24   Page 26 of 29
Case 1:17-cr-10063-DJC   Document 77   Filed 12/22/17   Page 25 of 28

25

1    certain special conditions, this is on page 23 of the

2    presentence report.  Counsel, I'm inclined to adopt these.

3    These are numbered 1 through 4.  Do you need to be heard on any

4    of these?

5         Mr. Heinrich?

6         MR. HEINRICH:  No, your Honor.

7         (Pause.)

8         MR. SINNIS:  No, your Honor.

9         THE COURT:  Mr. Lobo, I'd ask you to rise so I can

02:46 10    formally impose sentence.

11         Mr. Lobo, pursuant to the Sentencing Reform Act of

12    1984, and as I've said, having considered the factors under

13    Title 18, United States Code, 3553(a), it is the judgment of

14    this Court that you're hereby committed to the custody of the

15    Bureau of Prisons for a period of 60 months.

16         I shall make the recommendations that Mr. Sinnis has

17    asked me to on your behalf.  I'll recommend that you be housed

18    at Devens, the federal facility at Devens, to the extent that

19    it's consistent with your Criminal History Category or security

02:47 20    classification.  As you might already understand from your

21    counsel, that is a decision that BOP has to make, but I will

22    make the recommendation that they house you there.

23         I will also make a recommendation that you participate

24    in any vocational training that's available at the BOP

25    facility.

Case 4:22-cr-10301-TS   Document 502-2   Filed 08/29/24   Page 26 of 29
Case 1:17-cr-10063-DJC   Document 77   Filed 12/22/17   Page 26 of 28

26

1          I will also recommend that you participate in the RDAP

2     program.

3          And I'd also make a recommendation that once you're

4     released, Mr. Lobo, that you participate in this court's CARE

5     program.  Mr. Sinnis can advise you about that program, if

6     you're interested.  It's a voluntary program, but it does

7     assist with reentry, and I urge you to seriously consider

8     participating.

9          Upon your release from imprisonment, Mr. Lobo, you'll

02:48 10    be placed on a period of supervised release for a term of three

11     years.

12          Within 72 hours of your release from BOP custody you

13     shall report in person to the district in which you are

14     released.

15          I'm not imposing a fine since I find, based on the

16     presentence report, you don't have the ability to pay one.

17          During your supervised release you must comply with

18     the mandatory and standard conditions of supervision that will

19     be reflected in my judgment.

02:48 20          Mr. Sinnis, will Mr. Lobo waive the reading of those?

21          MR. SINNIS:  Yes, your Honor.

22          THE COURT:  As to the special conditions, these are

23     also conditions you must comply with, Mr. Lobo.

24          During your term of supervised release you're

25     prohibited from drinking alcohol to the point of intoxication,

Case 4:22-cr-10301-TS Document 9D-2 Filed 08/09/24 Page 28 of 29
Case 1:17-cr-10063-DJC Document 77 Filed 12/22/17 Page 27 of 28

27

        1    which is defined under Mass. law as .10.

        2         You must participate in any program for substance

        3    abuse counseling or any vocational services, training program

        4    as may be directed by Probation.

        5         You shall be required, based on your ability to pay or

        6    the availability of third-party payment, to pay for these

        7    treatment programs.

        8         As to any substance abuse counseling, that may include

        9    random drug testing, not to exceed 104 drug tests per year.

02:49  10         I also order that you pay the $100 mandatory special

       11    assessment, which shall be due immediately.

       12         Mr. Lobo, that will be the judgment of the Court, and

       13    you can be seated.  Thank you.

       14         Counsel, other than advising Mr. Lobo of his appellate

       15    rights, anything else that I need to take up?

       16         MR. HEINRICH:  No, your Honor.

       17         MR. SINNIS:  No, your Honor.

       18         THE COURT:  Mr. Lobo, I need to advise you that you

       19    can appeal your conviction if you believe your guilty plea was

02:50  20    unlawful or involuntary or there's some other fundamental

       21    defect in the proceeding that was not waived by your guilty

       22    plea.  You also have the right to appeal the sentence I've just

       23    imposed.

       24         If you're unable to pay the costs of appeal, you may

       25    ask permission to have those costs waived and appeal without

1  paying.

2  You must file any notice of appeal within 14 days of

3  the entry of my written judgment.

4  If you request, the clerk of this court will

5  immediately prepare and file a notice of appeal on your behalf.

6  Do you understand, sir?

7  THE DEFENDANT:  Yes.

8  THE COURT:  Sir, I do wish you good luck.  You have a

9  strong support system which I don't often see for defendants,

02:50 10  and I hope you rely on it in making good choices and wise

11  choices in the future.

12  Thank you.

13  MR. SINNIS:  Thank you, your Honor.

14  THE CLERK:  All rise.

15  (Court adjourned at 2:51 p.m.)

16  - - - - - - - - - - - -

17  CERTIFICATION

18  I certify that the foregoing is a correct transcript

19  of the record of proceedings in the above-entitled matter to

20  the best of my skill and ability.

21

22

23

24  /s/Debra M. Joyce                    December 22, 2017
   Debra M. Joyce, RMR, CRR, FCRR       Date
25  Official Court Reporter