UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| UNITED STATES OF AMERICA, | |
|---|---|
| Plaintiff, | |
| v. | Case No. 1:21-CR-10350-LTS-10 |
| JACOB PARLIN, | |
| Defendant. | |

**DEFENDANT'S SENTENCING MEMORANDUM**

Defendant Jacob Parlin ("Mr. Parlin") respectfully submits this memorandum in support of his sentencing recommendation of 120 months of incarceration followed by 5 years of supervised release with special conditions.

1. **Introduction**

Mr. Parlin was a lifelong methamphetamine addict when he committed the offenses in counts 1 and 6 of the indictment. *See* D.E. 58. On March 31, 2021, law enforcement located numerous items consistent with personal use in the car, including:

- "[H]alf of a small orange pill" that "resembled a placebo style Adderall pill that we have recently seen which is known to be 'pressed' Methamphetamine."
- "[A] small bottle cap with white powder residue that was consistent with a device used to prepare narcotics for intravenous use."
- "[A] glass smoking pipe."
- "[A] used Hypodermic Needle."
- "[S]everal $1.00 bills . . . that had been rolled up," a "very common for drug users to do as a method of snorting drugs."

1

*See* D.E. 605-1. Probation has confirmed Mr. Parlin's significant history of substance abuse, including his "using meth on a daily basis" for long stretches of his adult life. *See* Presentence Investigation Report ("PSR") ¶¶79-86. Mr. Parlin is also diagnosed with anxiety, for which he is prescribed medication. *See* PSR ¶¶76-77. Mr. Parlin has never received addiction or mental health treatment, but desires to obtain it now and in the future. *See* PSR ¶¶76-77, 85-86.

Despite his severe addiction, Mr. Parlin has maintained strong family ties and a good work history. His mother, Brenda Parlin, and grandmother, Rita Parlin, love him dearly and have described his many positive qualities in letters to the Court. *See* PSR ¶¶68-69; *see also* Letters, attached at Exhibit A. Both women describe how Mr. Parlin would regularly assist his elderly grandmother and care for his three children. *See id.* The mother of his three children, now ages 17, 19, and 22, abandoned them at a young age. *See id.* Mr. Parlin raised all three children from 2013 to 2020 as a single parent. *See* PSR ¶71. He was living with two of his two sons, mother, stepfather, grandmother, and girlfriend at the of his arrest. *See* PSR ¶73. A letter from his girlfriend, Alexandra Youngblood ("Ms. Youngblood"), provides examples of Mr. Parlin's many personal and interpersonal qualities. *See* Exhibit A. Mr. Parlin has obtained his GED and, from 2014 to 2021, was a member of Iron Workers Local 7 Union in Boston, driving daily from his home in Maine. *See* PSR ¶¶87-88.

Mr. Parlin faces a mandatory minimum sentence of 10-years imprisonment followed by 5 years of supervised release. *See* PSR ¶¶94, 97. That sentence is "sufficient, but not greater than necessary" to serve the purposes of sentencing. *See* 18 U.S.C. § 3553(a). For the reasons stated herein, Mr. Parlin respectfully requests that the Court impose a sentence of 120 months' imprisonment followed by 5 years of supervised release, with special conditions that he maintain substance abuse and mental health treatment as directed by probation and the Court.

2. **Applicable Statute**

   18 U.S.C. § 3553(a) provides as follows:

   > The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this section. The court, in determining the particular sentence to be imposed, shall consider - (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed – (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established for [the Sentencing Guidelines]; (5) any pertinent policy statements [by the Sentencing Commission]; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.

3. **Advisory Sentencing Guidelines**

After *United States v. Booker*, 543 U.S. 220, 259 (2005), the sentencing guidelines are not mandatory, but advisory. The sentencing court must compute the sentencing guidelines, which are the "starting point and the initial benchmark," but which may not be presumed reasonable. *Gall v. United States*, 552 U.S. 38, 49-51 (2007). Then, the court must consider the parties' arguments, after which it makes an "individualized assessment based on the facts presented," considering all the factors under 18 USC § 3553(a). *Id*. Ultimately, the Court must select a sentence within the statutory range that is "sufficient, but not greater than necessary" to satisfy the varied purposes of sentencing identified by Congress. 18 USC § 3553(a).

   a. **Offense Level Computation**

Mr. Parlin respectfully objects to the Offense Level computation set forth in the Presentence Investigation Report ("PSR"). Whereas the PSR indicates that Mr. Parlin's total

offense level is 36, this Court should determine the correct total offense level to be 28.

       i. **Base Offense Level**

For the reasons stated below, Mr. Parlin's correct Base Offense Level is 30, not 36 as stated in the PSR. *See* PSR ¶19.

       1. <u>Mr. Parlin is accountable for 882.8 grams, but not an additional 1.3 kilograms.</u>

Mr. Parlin is responsible for 882.8 grams of methamphetamine seized on March 31, 2021. *See* PSR ¶9. However, he is not responsible for 1.3 kilograms of methamphetamine purportedly discussed on March 11, 2021. *See* PSR ¶11.

First, in the March 11, 2021 phone calls between Harry Tam ("Mr. Tam") and Mr. Parlin, the nature or identity of the item or substance is never identified.

Second, Mr. Tam never stated that Mr. Parlin could "sell it" in less than a week, as the government indicated for the PSR (*see* PSR ¶11); rather, Mr. Tam stated, "I don't think it's going to take you a week dude. I think that you'd be back by the end of the weekend or Monday." With the nature of the item or substance unidentified, Mr. Tam's prediction as to when Mr. Parlin might "be back" is of limited value.

Third, Mr. Tam never informed Mr. Parlin of the amount of the items or substance he was prepared to purportedly deliver to him. Whereas Mr. Tam called codefendant Vincent Duong ("Mr. Duong") and stated, "I'm picking up three pounds [approximately 1.3 kilograms] from George right now," Mr. Tam told Mr. Parlin, "I went and picked up a couple . . . that are good." *See id*. Mr. Tam's use of the term "couple" suggests "two" rather than "three."[1] Indeed, even if Mr. Tam had picked up "three pounds," as he told Mr. Duong, that does not mean that he

---

[1] *See e.g.* https://www.merriam-webster.com/dictionary/couple (last viewed March 11, 2024) (first three definitions of "couple" describing "two" or a "pair" of things; fourth and final definition describing, "an indefinite small number: few").

4

was prepared to deliver those same items in those same amounts to Mr. Parlin. Further, since Mr. Tam decided to use the word "three" with Mr. Duong and the word "couple" with Mr. Parlin, it is probable that Mr. Tam elected to keep at least one of the "pounds" he received from George for himself or someone else. Simply put, Mr. Tam's use of the word "couple" with Mr. Parlin strongly indicates two of something, not three of something.

Fourth, although agents observed two people they believed to be Mr. Duong and Mr. Parlin at a carwash in Rochester, New Hampshire,[2] there is no reason to believe, as the government suggests, that "the targets became aware of police presence," prompting them to scuttle a transaction. *See* PSR ¶11. There was no testimony concerning this event at trial. *See* PSR at p. 33 (Objection #2). Moreover, the Report of Investigation concerning that event merely indicates "that the two walked back and forth to the pickup truck (ME Reg: 8976YD), a number of times." *See* Report of Information, attached at Exhibit B. Indeed, the report never suggests that the two individuals were made aware of law enforcement nearby. *See id*.

Fifth, and crucially, the government concedes that that no drug transaction ever took place on or about March 11, 2021. *See* PSR ¶11.

Based on the foregoing, Mr. Parlin must not be determined responsible for a purported 1.3 kilograms of methamphetamine.

> 2. The Court should use the "methamphetamine" rather than "methamphetamine (actual)" guidelines under USSG §2D1.1(c)

For the reasons stated in Mr. Parlin's "Motion for Downward Departure or Variance," filed contemporaneously with this memorandum and hereby incorporated by reference, this

---

[2] The government's "Statement of Offense Conduct" inaccurately described the location as "Rochester, New York." *See* PSR at p. 32 (Objection #2). There was no reason to believe that Mr. Parlin, Mr. Tam, or Mr. Duong were prepared to drive to New York for a meeting. The government indicates that their reference to New York rather than New Hampshire was a typographical error. Nevertheless, the government's mistaken reference to such an unlikely location highlights the risks associated with incautious interpretations of these phone calls.

5

Court should apply the "methamphetamine" rather than "methamphetamine (actual)" guidelines under USSG §2D1.1(c). *See* D.E. 605.

Based upon Mr. Parlin's accountability for the 882.8 grams of methamphetamine seized on March 31, 2021, his Base Offense Level is properly calculated at 30. *See* USSG §2D1.1(c)(5).

### ii. "Mitigating Role" Reduction under USSG §3B1.2.

This Court should apply a 2-level "minor role" adjustment. *See* USSG §3B1.2. "The determination whether to apply subsection (a) [4-level "minimal participant" adjustment] or subsection (b) [2-level "minor role" adjustment], or an intermediate adjustment, is based on the totality of the circumstances and involves a determination that is heavily dependent upon the facts of the particular case." *See* USSG §3B1.2, comment (n.3(C))." In making a "mitigating role" determination, "the court should consider the following non-exhaustive list of factors:

    (i)    the degree to which the defendant understood the scope and structure of the criminal activity;

    (ii)    the degree to which the defendant participated in planning or organizing the criminal activity;

    (iii)    the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;

    (iv)    the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;

    (v)    the degree to which the defendant stood to benefit from the criminal activity."

*See id*. As to "minor participants," "[s]ubsection (b) applies to a defendant . . . who is less culpable than most other participants in the criminal activity, but whose role could not be described as minimal." *See id*.

Mr. Parlin is defendant number 10 in a 10-defendant indictment. *See*. D.E. 58. He had no contact with Mr. Tam's sources in California or the Midas autobody shop in Brookline where Mr. Tam received drug packages. Moreover, whereas the indictment alleges that the conspiracy occurred over about 15-months, from "in or about March 2020 through in or about May 2021," Mr. Parlin's conduct was limited to March 2021 and was seized with drugs on a single date, March 31, 2021. *See* PSR ¶¶7-13.

Mr. Parlin's conduct played a minor role as compared to most of his codefendants.[3]

**(1) <u>Harry Tam</u>**

Mr. Tam pled guilty to counts 1, 6, 10, and 11 of the Indictment.[4] *See* PSR ¶5. His conduct spanned the length of the conspiracy. The probation department attributes over 10 kilograms of methamphetamine (actual) to Mr. Tam, as well as a managerial role adjustment. *See* D.E. 603, 17-23. The defense attributes over 3 kilograms of methamphetamine (mixture) to Mr. Tam with no managerial role adjustment. *See id.* The government has called Mr. Tam the "most culpable member of the conspiracy." *See* D.E. 553 at 4-5. He faces a 10-year mandatory minimum sentence and has not yet been sentenced. *See* PSR ¶5.

**(2) <u>Tony Nguyen</u>**

Mr. Nguyen pled guilty to Counts 1 and 2 of the Indictment. Mr. Nguyen was one of Mr. Tam's suppliers from California and "moved large amounts of methamphetamine" during the

---

[3] The discussion that follows concerning the codefendants' conduct and criminal history also relates to 18 U.S.C. § 3553(a)(6), "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," as discussed further below.

[4] Count 1 of this 11-count indictment charged Conspiracy to Distribute and to Possess with the Intent to Distribute 50 Grams or More of Methamphetamine, 21 U.S.C. § 846, 21 U.S.C. § 841(b)(1)(A). Counts 2 through 6 charged to Distribution of and Possession with the Intent to Distribute 50 Grams or More of Methamphetamine, 21 U.S.C. § 841, 21 U.S.C. § 841(b)(1)(A). Counts 7 through 9 charged Possession of a Firearm in Furtherance of a Drug Trafficking Offense, 18 U.S.C. § 924(c). Count 10 charged Felon in Possession of a Firearm and Ammunition, 18 U.S.C. § 922(g)(1). Count 11 charged Possession of a Firearm with an Obliterated Serial Number, 18 U.S.C. §922(k). *See* PSR ¶5.

conspiracy. *See* D.E. 603 at 22. He has also been convicted of violent offenses and arrested on drug and firearm offenses in California. According to the government, the "[i]nitial probation Guidelines calculations suggest 135 to 188 months." *See* D.E. 553 at 4. Sentencing is pending. *See* PSR ¶5.

**(3) Marcus Leyden**

Mr. Leyden was convicted of Counts 1, 4, and 8 of the indictment. *See id.*; D.E. 465 at 2-4. Mr. Leyden "has a criminal history Category VI with an adult criminal record stretching back over 25 years with an emphasis on identity theft, robbery, assault, and weapon possession and use of a weapon." *See* D.E. 452 at 1. Notably, "Investigators believe that Leyden had an association with co-defendant Tam prior to this criminal activity charged in the Indictment." *See id.* at 2. As to this conspiracy, "[m]ultiple packages were sent to the auto shop in Leyden's name." *See id*. After a car stop by law enforcement, Mr. Leyden "fled the scene" and "later carjacked a vehicle while armed with a firearm." *See id*. He was arrested at a hotel in Watertown with a "ghost gun" and over 100 grams of methamphetamine. *See id*. His overall attributable drug weight led to a mandatory minimum of 120 months on the drug charges. *See id.* at 1. The Court sentenced Mr. Leyden to the overall mandatory minimum of 180 months' imprisonment (120 months for the drug offenses followed by 60 months for the firearm offense) and 5 years supervised release. *See* PSR ¶5.

**(4) Henry Vuong**

Mr. Vuong was originally charged with counts 1, 3, and 7 of the indictment. *See* D.E. 58. However, he pled guilty to counts 1 and 2 of a superseding information, which charged him with Conspiracy to Distribute and to Possess with the Intent to Distribute 50 Grams or More of Methamphetamine, 21 U.S.C. § 846, 21 U.S.C. § 841(b)(1)(B)(viii), and Possession of a Firearm

in Furtherance of a Drug Trafficking Offense, 18 U.S.C. § 924(c)(1)(A)(i). *See* PSR ¶5. Nothing had changed about the underlying facts between the indictment and Mr. Vuong's plea of guilty to the superseding information. The government has indicated it will recommend the mandatory minimum of 120 months. *See* D.E. 553 at 5. Sentencing is pending. *See* PSR ¶5.

(5) **Robert Ostrander**

Mr. Ostrander pled guilty to count 1 of the indictment. The government has described him as "a customer of and salesperson for Tam," and the wire "repeatedly intercepted" him and Tam discussing drug transactions. *See* D.E. 479 at 2. "In addition to these discussions regarding methamphetamine, the wire also captured another conversation in which the defendant admitted that he was carrying a firearm in his car, where he also had methamphetamine." Indeed, police "discovered a BB gun" with Mr. Ostrander. *See id*. at 2-3. Mr. Ostrander also collaborated with Mr. Tam at the Midas Auto Body Shop in Brookline. The government asked the Court to sentence Mr. Ostrander to 57 months in custody, which it represented was the "low-end" of the guidelines based in part upon the "methamphetamine (actual)" guidelines. *See id*. at 3. The Court appears to have agreed with the defendant and probation that the "methamphetamine" guidelines governed, and sentenced Mr. Ostrander to time served (18 months) followed by 3 years of supervised release. *See* PSR ¶5; *see also* D.E. 478.

(6) **James Colamaria**

Mr. Colamaria pled guilty to count 1 of the indictment. *See* PSR ¶5. He was a Career Offender with a Criminal History Category of VI. *See* D.E. 446 at 1. On March 6, 2021, after discussing the transaction on intercepted wire communications, Mr. Duong "[gave] 2 pounds to Colamaria." *See* USAO_000221-225, attached at Exhibit C. This was the same amount that Mr. Parlin possessed on March 31, 2021. *See* PSR ¶9.

9

Further, Mr. Colamaria "was arrested on August 2, 2021, on unrelated state charges: He and a companion had not paid their bill at the Archer Hotel in Burlington, and when they fled, they left behind a large quantity of drugs – including about **ten pounds of methamphetamine**" and other drugs. *See* D.E. 446 at 4. In its Sentencing Memorandum concerning Mr. Colamaria, the government wrote "it expects that, even after this court sentences [Mr. Colamaria] for his role in this drug trafficking conspiracy, he will have the state proceedings, where it is likely that any sentence will be ordered to run consecutive to the punishment here," and that it "considered this circumstances when agreeing to recommend a sentence of 95 months in this case." *See id*. However, Mr. Colamaria's state case in Woburn District Court from the Burlington seizure had already been dismissed on speedy trial grounds, and he was never indicted or arraigned in Middlesex Superior Court, which also services Burlington. *See* Docket 2153CR001134, *Commonwealth v. James Colamaria*, attached at Exhibit D.[5] This Court sentenced Mr. Colamaria to 95 months imprisonment followed by 3 years supervised release. *See* PSR ¶5.

**(7) <u>Vincent Duong</u>**

Mr. Duong was originally charged with counts 1, 7, and 9 of the indictment. *See* D.E. 58. However, he pled guilty to counts 1 and 2 of a Superseding information, which charged him with Conspiracy to Distribute and to Possess with the Intent to Distribute 5 Grams or More of Methamphetamine, 21 U.S.C. § 846, and Possession of a Firearm in Furtherance of a Drug Trafficking Offense, 18 U.S.C. § 924(c)(1)(A)(i). *See* PSR ¶5; *see also* D.E. 553 at 1.

Mr. Duong "was one of Tam's trusted business partners" and "among the more culpable members of the conspiracy." *See* D.E. 553 at 2, 5. "[O]n more than one occasion, [Mr. Duong] received at his home in Canton, Massachusetts, multi-pound methamphetamine shipments that

---

[5] A search for a case against Mr. Colamaria in Middlesex Superior Court on the Massachusetts Trial Court Access website ("Masscourts") yields a result of "No Records Found." *See* Masscourts Search Result, attached at Exhibit E.

10

he then delivered to Tam." *See id.* On March 12, 2021, Investigators seized a package from Mr. Duong that "contained a total of 1.98 kilograms of actual methamphetamine." *See id*. at 3. A search warrant executed at Mr. Duong's home "recovered a Glock, a magazine containing 10 rounds of 0.22 ammunition, 2 rounds of 0.9-mm ammunition, one ballistic vest, and pills." *See id*. According to the government, Mr. Duong's "culpability approximates that of Leyden and Vuong, both of whom distributed methamphetamine for Tam and were arrested with firearms." *See* D.E. 553 at 5.

Despite a guideline range of "135 to 168 months plus the five-year consecutive term that the 924(c) statute requires" (a total range or 195 of 228 months), the government recommended the mandatory minimum sentence of 120 months (60 months on the drug offense followed by 60 months on the firearm offense). *See* D.E. 553 at 1. The Court sentenced Mr. Duong to the mandatory minimum of 120 months' imprisonment and 4 years of supervised release. PSR ¶5.

### (9)[6] Eli Sanders

Mr. Sanders pled guilty to Count 1 of the indictment. His counsel conceded that Mr. Sanders "has an extensive prior criminal history;" and although "the bulk of those convictions [were] misdemeanors," it does not appear that they all were. *See* D.E. 224 at 2. Like Mr. Parlin, Mr. Sanders used some of the drugs from the conspiracy "for his own addiction." *See id*. Mr. Sanders also made "street sales" of methamphetamine. *See id*. *See* This Court sentenced him to the mandatory-minimum sentence of 60 months' imprisonment and three years of supervised release. *See* PSR ¶5.

### Summary as to "Minor Role"

As the above demonstrates, Mr. Parlin is less culpable than the majority of his

---

[6] The name of Defendant 8 is redacted on the public indictment. *See* D.E. 58. That individual has not been arraigned.

codefendants. In light of the limited scope of his conduct in March 2021, the single seizure, his lack of connection to California or the Midas auto body shop, the lack of firearm conviction or violent conduct as part of the conspiracy, and the overwhelming evidence of his substance abuse at the time of the offense, this Court should apply a 2-level "minor role" adjustment. *See* USSG §3B1.2.

### iii. Acceptance of Responsibility and the Decision to go to Trial.

Mr. Parlin did not plead guilty and, therefore, acknowledges that he will not obtain a 3-level reduction for acceptance of responsibility. However, it bears mention that Mr. Parlin sought to plead guilty to a substantial prison sentence on many occasions, including to a sentence of 7-8 years. For example, in an exchange between predecessor counsel and the government, predecessor counsel sought to resolve the case for a 7- or 8-year prison sentence. The government responded, "Ok, not a promise obviously since I don't control the final decision, but I will advocate for that." *See* Email Correspondence. Mr. Parlin was never permitted to plead guilty to any sentence beneath the 10-year mandatory minimum.

Notably, both Mr. Vuong and Mr. Duong were permitted to plead guilty to a superseding information that reduced their potential exposure at sentencing. Further, the government recommended a well-below guidelines sentence of 95 months to Mr. Colamaria, a Career Offender who received 2 pounds of methamphetamine from Mr. Duong (the same amount seized from Mr. Parlin), and shortly thereafter possessed an additional 10 pounds of methamphetamine at a Burlington hotel, an offense for which he has never been punished.

It should go without saying that the decision to go to trial should not be held against any defendant. That proposition is especially true for Mr. Parlin, who sought to resolve the case for a substantial prison sentence, including one resembling Mr. Colamaria's sentence, but was never

12

permitted to do so.

### iv. Total Offense Level

With a base offense level of 30 and a 2-level adjustment for "minor role," Mr. Parlin's correct total offense level is 28.

### b. Criminal History Category

The final PSR correctly calculates a criminal history score of 9 and a criminal history category of IV.[7] *See* PSR ¶¶46-47. It bears noting, however, that 6 of those 9 points result from two Arizona state court matters from 2007, approximately 14 years before conduct in this case. *See* PSR ¶¶36-37.

### c. Advisory Guideline Range

A Total Offense Level of 28 and Criminal History Category of IV yields a range of 110-137 months of incarceration under the advisory sentencing guidelines.

## 4. Sentencing Recommendation

Mr. Parlin respectfully requests a sentence of 120 months of incarceration followed by 5 years of supervised release, with special conditions that he maintain substance abuse and mental health treatment as directed by probation and the Court. That sentence is both consistent with the advisory sentencing guidelines as calculated above, and "sufficient, but not greater than necessary" to achieve the purposes of sentencing set forth in 18 U.S.C. § 3553(a).

Mr. Parlin is forty-four years old and, after a decade in prison, would be in his early to mid-fifties. *See* PSR ¶68. He would also be on supervised release until he is nearly sixty years

---

[7] In its sentencing memorandum regarding Mr. Parlin (which is incorrectly captioned with Mr. Duong as the defendant), the government incorrectly states that the final PSR provides for a Criminal History Category of V. *See* D.E. 604 at 1. The final PSR, which corrected errors made in the draft, provides for a Criminal History Category of IV. *See* PSR ¶¶46-47. The government's mistake has downstream effects, most importantly an erroneous inflation of the sentencing guideline range. This is only one of many reasons to reject the government's sentencing recommendation.

old. But for his severe methamphetamine addiction, about which there is abundant evidence, the instant offense would never have occurred. Mr. Parlin's commitment to his family is strong, as witnessed by the letters by his mother, grandmother, and girlfriend, *see* Exhibit A, and his role as a single father raising three children for seven years. *See* PSR ¶71. He is also hard-working and capable of gainful employment, as his membership in the Iron Workers Local 7 Union amply demonstrates. *See* PSR ¶88. The terms of conditions of supervised release, including treatment for addiction and mental health, will help ensure Mr. Parlin's sobriety and transition back into a life of family and valuable work.

Moreover, 10 years in prison followed by 5 years in prison is necessary to "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). Mr. Parlin is far less culpable than Mr. Leyden, who had a criminal history category of VI and committed an armed carjacking in furtherance of the conspiracy and received 180 months. *See* D.E. 452 at 1-2; PSR ¶5. Mr. Parlin is also much less culpable than Mr. Duong, who was "among the more culpable members of the conspiracy" and was convicted of a firearm offense and received 120 months. *See* D.E. 553 at 2; PSR ¶5. A decade in prison would be over two years ***longer*** than the 95 month sentence that Mr. Colamaria, despite Mr. Colamaria's possession of the same amount of methamphetamine as Mr. Parlin (*see* Exhibit C) and possessing 10 additional pounds of methamphetamine for which he has never been held responsible. *See* Exhibits D and E.

A sentence of 120 months followed by 5 years of supervised release is commensurate with these circumstances and "sufficient, but not greater than necessary" to achieve the purposes of sentencing. *See* 18 U.S.C. § 3553(a). Mr. Parlin respectfully requests that the Court adopt his recommendation.

| | |
|---|---|
| DATE: March 15, 2024 | Respectfully Submitted,<br>JACOB PARLIN<br>By his attorney:<br><br>/s/ David J. Grimaldi<br>David J. Grimaldi (BBO # 669343)<br>David J. Grimaldi, P.C.<br>929 Massachusetts Avenue, Suite 200<br>Cambridge, MA 02139<br>Tel: 617-661-1529<br>Fax: 857-362-7889<br>david@attorneygrimaldi.com |

<u>CERTIFICATE OF SERVICE</u>

    I, David J. Grimaldi, hereby certify that true copies of this memorandum were served on all registered participants via CM/ECF this 15th day of March 2024.

                                         /s/ David J. Grimaldi
                                         David J. Grimaldi